## S. S. HOWARD *v.* THE STATE.

1. CONTINUANCE. — Prior to the revision of the Codes the trial courts had no discretion to refuse a first continuance when the application therefor complied with all the requirements of the statute. But by art. 560 of the Revised Code of Criminal Procedure the truth, merits, and sufficiency of first as well as subsequent applications are subjected to the sound discretion of the trial courts, whether in acting on the application itself or in determining a motion for new trial based on the refusal of the continuance.

2. SAME — PRACTICE. — It is only upon such controverted allegations as affect the question of diligence that an issue is provided for by art. 564.

3. CIRCUMSTANTIAL EVIDENCE. — In a trial for an unwitnessed assassination the State was allowed, over objection, to prove, in connection with other circumstances, that on the day previous to the murder, and in the range where the deceased herded his horses and was subsequently found dead by gunshot wounds, a witness who resembled the deceased was suddenly

confronted by a levelled gun in the hands of the defendant, who, on recognizing the witness, said, "You liked to have been a lost child," and passed on. *Held*, in view of the other evidence, that this testimony was competent.

APPEAL from the District Court of Bastrop   Tried below before the Hon. L. W. MOORE.

Alexander Farmer was found dead on the prairie on the 1st of June, 1878, about a mile west of the town of Paige in the county of Bastrop. Nine buckshot had penetrated his body, and were extracted from his heart and lungs.   On the preceding day he had started to the town of Bastrop from his home, which was about three miles north-east from Paige, and was not again seen alive by any of the witnesses. He was a brother-in-law of the defendant, whose father lived about a mile and a half south-west of Paige, and near the road to Bastrop travelled by the deceased.

In October, 1878, the grand jury of Bastrop County indicted S. S. Howard, the present appellant, for the murder of the deceased, and he was tried at the autumn term, 1879, found guilty of murder in the first degree, and his punishment assessed and adjudged at death.

The evidence for the prosecution was wholly circumstantial, except previous threats of the defendant against the life of the deceased, not communicated to the latter, and the provocation for which is not disclosed.   The circumstances proved by the State were numerous and of various kinds, and elicited from a considerable number of witnesses. In part, they consisted of the actions and movements of the defendant during two or three days anterior to the murder; but without a knowledge of the localities, or diagrams and much elaboration, the significance of this branch of the evidence is not communicable.   Two days previous to the assassination, he bought at a store in Paige a small quantity of buckshot of a size correspondent to those taken from the body of the deceased, and they were delivered to him

in brown wrapping-paper of the same kind as the gun-wadding found by the murdered man.

Over objections by the defence, W. H. Dixon testified that on Friday morning, preceding the Saturday on which the homicide was committed, he was hunting horses and met the defendant, whom he knew well, but had not seen for some time. Before they met, the road took a turn around a clump of trees and undergrowth, and as witness got around these the defendant had his gun levelled upon him. Witness was startled, and exclaimed, "Sam!" whereupon the defendant dropped his gun and passed on, saying, "You liked to have been a lost child." This was about a mile and a half from the defendant's and about two and a half from the deceased's, whose horses often ran in that range. This witness stated that he was a little larger man than the deceased, and they both wore long beards. His beard was quite gray, and the deceased's brown with but little gray in it. To the admission of this testimony the defence reserved exceptions. It was proved that the same day the deceased was killed, the defendant left for Bee County, more than one hundred and fifty miles distant, and was arrested there a few days afterwards.

The father and a sister of the defendant testified in his behalf. They stated that there was no ill-feeling between the defendant, or any of his family, and the deceased; that the defendant took no gun with him when he started to Bee County, and went there to visit a brother-in-law, in pursuance of a purpose formed some days before the homicide. His sister stated that he would have started the day previous, but that she detained him to get his clothes ready. Defendant was arrested at the house of his brother-in-law in Bee County.

*Shepard & Garrett*, for appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J.    This appeal is from a judgment of conviction of murder in the first degree, the death-penalty being assessed.

The indictment charges the appellant with the murder of Alexander Farmer, in Bastrop County, on June 1, 1878.

It is shown by a bill of exceptions that when the case was called for trial the defendant applied for a continuance, in order that he might be enabled to procure the attendance of a witness, one Mrs. Davis, whose testimony he avers to be material for his defence.    The court overruled the application and ruled the defendant to trial, which resulted in his conviction.    The action of the court was excepted to at the time, and forms a ground in the motion for a new trial. This is the most important subject presented for consideration here.

The application for a continuance was made subsequent to the revision of the Code, and being the first application, must be determined by art. 560 of the Revised Code of Criminal Procedure.    The third subdivision of the article is as follows :  " The facts which are expected to be proved by the witness, and it must appear to the court that they are material."    This is not a new provision ; on the contrary, it was formerly a part of the requirements of a first application by a defendant, on account of the absence of a witness, agreeably to art. 518 of the original Code.    Pasc. Dig., art. 2987.

The most important change made by the revised article (560) to the original article (518) was to settle the rule of practice by a legislative declaration that the practice which had grown up under the old Code, to the effect that when a first application for a continuance complied with the statute the courts had no discretion in the matter, but the continuance was a matter of right, should no longer obtain ; but that a first application for continuance, as well as subsequent applications, should be addressed to and confided in the sound discretion of the judge to whom it was addressed.

This legislative intent is clearly expressed in subdivision 6 of the revised article, in these words: ''And the truth of the first, or any subsequent application, as well as the merit of the ground set forth therein, and its sufficiency, shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right.''

If, however, the application for a continuance be overruled, and the defendant be convicted, and it should then appear from the whole testimony adduced on the trial that the testimony of the witness on account of whose testimony a continuance was asked was material and probably true, a new trial should be granted. All this is provided for in the proviso appended to the sixth subdivision of art. 560, and immediately following the extract set out above, in these words: '' *Provided*, that should an application for a continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the application was of a material character, and that the facts set forth in said application were probably true, a new trial should be granted, and the cause continued for the term, or postponed to a future day of the same term.'' *Reynolds* v. *The State* (decided at the present term), 7 Texas Ct. App. 516. It is apparent from the reading of the entire article that as to whether a continuance on the application should be granted or not, or whether after conviction a new trial should be granted or not, the matter throughout is addressed in the first instance to the discretion of the judge who presides at the trial, and without reference to art. 564, which seems simply to provide for determining the question of diligence when an issue is made as to the question of diligence. The article is as follows: ''Any material fact stated, affecting diligence, in an application for continuance may be denied by the adverse party. The denial shall be in writing, and supported by the oath of some credible person, and filed as soon as practicable

after the filing of the application for a continuance." Succeeding articles prescribe the practice when an issue is formed on any material fact affecting diligence in an application, agreeably to art. 564. As a matter of practice, we are of opinion that art. 564 does not provide for the formation of an issue, except as to the one subject of diligence; yet we are of opinion that the application for a continuance in the first instance, or, when considered with reference to a new trial, the evidence it was expected to prove by the absent witness, was not of sufficient importance and materiality to have warranted the court in either granting a continuance or to have granted a new trial in order that the defendant might have the benefit of it, when judged by the application, and without reference to the affidavit offered by the counsel for the prosecution, in opposition to the continuance.

In view of the fact that the proof of the defendant's guilt depended alone on circumstantial testimony, where the mind was seeking to investigate every means of information having any bearing upon the question to be determined, we are unable to perceive any error in permitting the witnesses to give their testimony as stated in the appellant's bill of exceptions, over the objection of the defendant, or that the testimony of these witnesses was · calculated, under the circumstances, to divert the minds of the jury from the main fact to be determined by them.

On the trial below, and after the judge had delivered to the jury his general charge, counsel for the defendant presented certain special instructions, and requested that they be given to the jury; which the court declined to do, and to the ruling exception was taken. The judge appends to the special instruction the following: " Refused because, so far as correct, given in the charge of the court." The principal controversy concerning the charge, both as to that given and those refused, involves the question as to the sufficiency of the charge on circumstantial evidence; no other

objection is urged against the charge of the court as given to the jury. It must be admitted that when the State relied upon circumstantial testimony alone for a conviction, it became a matter of vital importance to the defendant that the jury should be properly instructed as to the weight to be given to this species of testimony, and the certainty to which it must lead in order to warrant a conviction upon it. From the charge of the court as set out in the record, it seems that the grave and solemn importance attaching to the subject was felt and fully realized by the judge who presided at the trial, and this is manifested in the charge, which was so full and ample as to clearly instruct the jury on this branch of the case. The charge properly instructed the jury on this most important part of their solemn duty under the evidence, and in a manner not at all calculated to mislead, or to require any additional instructions.

We have considered the case as presented by the record, in the light of the able and exhaustive brief and oral argument of learned counsel, and in view of the importance of the subject and our responsibility to the law, and with a full realization of the fact that the life of a fellow-being depends upon the issues involved ; and upon a whole view of the case we are constrained to say, in conclusion, that agreeably to the record before us the appellant has by his own act forfeited his own life ; that he has been fairly tried, and properly convicted of the crime of murder in the first degree, and has been legally adjudged to suffer the extreme penalty of the law. There is no such error apparent in the proceedings as would warrant this court in interfering with the verdict of the jury or the judgment of the court. In this state of case, we cannot do otherwise then affirm the judgment, and it is so ordered.

*Affirmed.*